PEOPLE v HUGHES

Docket No. 78-1038. Submitted June 12, 1979, at Lansing.—Decided
     November 5, 1979. Leave to appeal applied for.

Howard Hughes, III, was convicted of felony murder, Washtenaw
     Circuit Court, William F. Ager, Jr., J. An earlier trial on the
     same charge had ended in a mistrial. Defendant appeals, alleg-
     ing that the trial court erred in ruling that evidence of a prior
     conviction for second-degree murder could be used for impeach-
     ment if the defendant elected to testify, and that the trial court
     erroneously refused defense counsel's request for a complete
     typed transcript of his first trial. *Held:*

     1. The trial court did not abuse its discretion in ruling that
     evidence of the prior conviction would be admissible under the
     facts of this case.

     2. Denial of the complete transcript was not an abuse of
     discretion where prior to trial the court had made available
     tape recordings of the earlier trial proceedings and offered to
     have transcribed any portions which counsel wished to use for
     purposes of impeachment.

     Affirmed.

     T. M. BURNS, J., dissented. He would hold that given the facts
     of this case the trial court's decision to allow the use of
     evidence of the prior conviction for impeachment was an abuse
     of discretion, as the prejudicial effect of this evidence out-
     weighed its probative value. He would reverse.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVIC-
     TIONS.
     Evidence of a defendant's prior felony convictions is admissible

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 321.
[2] 21 Am Jur 2d, Criminal Law § 233.
     4 Am Jur 2d, Appeal and Error § 413.
[3] 4 Am Jur 2d, Appeal and Error § 413.
[4] 29 Am Jur 2d, Evidence §§ 253, 330.
     Right to impeach credibility of accused by showing prior conviction,
     as affected by remoteness in time of prior offense. 67 ALR3d 824.
[5] 29 Am Jur 2d, Evidence § 327.

for impeachment purposes in the discretion of the trial judge and, although great care should be used where the prior conviction was for an offense similar to that charged, similarity does not per se bar impeachment by use of evidence of the prior offense nor must the prior conviction be specifically in the area of dishonesty, such as fraud or embezzlement, for evidence of it to be admissible for impeachment.

2. CRIMINAL LAW — TRANSCRIPTS — INDIGENT DEFENDANTS.

Two factors are relevant to a determination of need where an indigent defendant has requested a free transcript of his trial: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

3. CRIMINAL LAW — TRANSCRIPTS — ALTERNATIVES TO TRANSCRIPTS.

Denial of a defendant's request, at his retrial, for a complete transcript of his first trial which had ended in a mistrial was not an abuse of the trial court's discretion where the court had made available to the defense an alternative substantially equivalent to a transcript, that being the opportunity to review tape recordings of the proceedings and to have transcribed any portions needed for impeachment purposes at the trial.

DISSENT BY T. M. BURNS, J.

4. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS.

*A trial court abused its discretion in ruling that a prosecutor would be allowed to impeach a defendant with evidence of a prior crime, should the defendant testify, where the prior offense was 14 years earlier, was of a similar nature to the crime for which the defendant was on trial, and was committed when the defendant was only 18 years old, and where the defendant had led a crime-free life since that time; under these circumstances the evidence of the prior offense was more prejudicial than probative.*

5. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS.

*The effect on the decisional process if an accused does not testify for fear of impeachment by the use of evidence of prior convictions, where the case against the defendant is close, may require that the impeachment evidence be excluded.*

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Elizabeth Osgood Pollard,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* for defendant on appeal.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

D. E. HOLBROOK, J. Defendant was convicted by jury on May 4, 1977, of felony murder, contrary to MCL 750.316; MSA 28.548, in connection with the fatal shooting of a police officer during the armed robbery of a branch of the National Bank of Ypsilanti on July 11, 1975. On June 7, 1977, he was sentenced to life imprisonment and now appeals of right.

Defendant's first trial ended in a mistrial in September 1976 when the jury was unable to reach a verdict. At the retrial police officer Claudius Wilcox testified that while pursuing the robbers' automobile as it fled the scene after the robbery he observed a portion of the driver's face, and identified defendant in court as the driver. Defendant was convicted of the crime charged and now presents five allegations of error, only two of which merit discussion.

Defendant first contends that the trial court erred reversibly by denying his pretrial motion to suppress evidence of his prior conviction of second-degree murder. In denying this motion the trial judge stated:

"As to the second request, the court suppress any

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

testimony, if the defendant takes the stand as to his past record, of course this only applies, any reference on defendant's past criminal record could only be brought if the defendant testifies. If he testifies, the court in exercising discretion, would feel that it would be proper to cross-examine the defendant only as to his felony record which he either has been found guilty or pled guilty, not misdemeanors or anything of this nature. * * * The court feels that this would go to the credibility of the defendant if he testifies. In the same manner, defendant, as if he testifies, testimony as to his college education where or what he's been doing pursuant, those things that he's accomplished, this also being brought forth as to anything which would affect his credibility, may also be presented by counsel for defendant, if the defendant testifies. This would be pertinent to his credibility. So what counsel appears to be arguing that it would be proper to show that the defendant has done excellent work in school, and so forth, and that he's been without a blemish for many years, but then defendant seems to claim that at that point the testimony should stop and say everything that's good should be permitted to be offered as to his credibility, but nothing in any way affecting his credibility should be offered, and the court, in its discretion, feels that this case on the basis of what the court has heard and seen, the court feels that this would be proper for cross-examination as to this felony."

Plaintiff's brief states that in November, 1963 defendant was convicted of second-degree murder, was paroled on September 23, 1969, and was discharged from parole after 24 months.

The Michigan Supreme Court, on January 6, 1977, entered an order giving notice that it was considering the adoption of proposed Michigan Rules of Evidence. 399 Mich 951. These rules were adopted by order of the Court on January 5, 1978, to be effective on March 1, 1978. 402 Mich lxxxviii. MRE 609(b) provides:

"(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *or of the release of the witness from the confinement imposed for that conviction, whichever is the later date."* (Emphasis added.)

Defendant's trial in the case at bar took place during April and May, 1977. The time interval between this trial and defendant's release from the confinement imposed pursuant to his earlier conviction is well within the ten-year limit imposed by MRE 609(b). Therefore, the Michigan Rules of Evidence, even if applicable to the instant case, would not have prohibited the use of evidence of defendant's prior conviction for impeachment purposes.

There is no question that the trial judge recognized his discretion to forbid impeachment of defendant by use of evidence of his prior conviction. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). Although evidence of similar prior convictions should be admitted with great care, *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), *People v Green,* 86 Mich App 142; 272 NW2d 216 (1978), similarity does not per se bar every impeachment by evidence of a prior similar conviction, *People v Cash,* 80 Mich App 623; 264 NW2d 78 (1978), *People v Townsend,* 60 Mich App 204; 230 NW2d 378 (1975). Furthermore, a prior conviction need not be specifically in the area of dishonesty, as fraud or embezzlement, for evidence of it to be admissible for impeachment. *People v Cash, supra, People v Payne,* 27 Mich App 133; 183 NW2d 371 (1970).

In the case at bar the trial judge carefully balanced the negative effect of impeachment against the positive aspects of defendant's antici-

pated testimony regarding his educational and
other accomplishments subsequent to his prior
conviction and decided that impeachment would be
allowed. There was no abuse of discretion. Fur-
thermore, although defendant did not testify at
trial, his alibi defense was developed through the
testimony of three defense witnesses who described
his whereabouts at various times during the day of
the crime. Defendant's first contention of error is
unmeritorious.

Defendant next argues that he was denied equal
protection of the law because the trial court re-
fused defense counsel's request for a complete
typed transcript of his first trial.

On January 17, 1977, Richard Zipser, defen-
dant's retained counsel who had conducted his first
trial, moved to withdraw from the case. Counsel
stated in his motion to withdraw that he was
willing to assist in the case by going over all issues
and evidence with any new defense counsel. The
trial judge on January 26, 1977, issued an order
granting the motion to withdraw, and on February
2, 1977, two new counsel were appointed to repre-
sent defendant.

Defendant's appointed counsel filed a written
motion on March 15, 1977, requesting the com-
plete transcript of the first trial. This motion was
heard on April 1, 1977, at which time one of
defendant's attorneys stated that he had received
from Mr. Zipser a transcript of the testimony of
witnesses Dudley Paschall and police officer Clau-
dius Wilcox. Officer Wilcox was the sole prosecu-
tion eyewitness to identify defendant as an active
participant in the robbery.

In denying the motion because of the physical
impossibility of transcribing the entire first trial
before the scheduled commencement of defen-

dant's retrial, the trial judge offered to make his conference room available to defense counsel and furnish them with recording equipment and a tape recording of all testimony at the first trial. He stated that counsel could listen to the tape as much as they wished, could make notes, and could then ask the reporter to transcribe any excerpts needed for impeachment purposes at defendant's forthcoming trial. One of defendant's attorneys suggested that he review the witness list with his co-counsel and Mr. Zipser, determine which witnesses they wanted to hear, and then have the court reporter transcribe limited portions of the testimony if necessary. The trial court agreed, although the record does not reveal that defense counsel ever followed this procedure.

On April 11, 1977, the first day of defendant's retrial, defense counsel again requested a complete transcript of the original trial and asked for a continuance until the transcript could be furnished. Counsel conceded that he had conferred with Mr. Zipser and had received "rough notes" from him. The trial judge denied these requests and stated:

"I would like to emphasize because sometimes appellate courts have a tendency sometimes to not quite understand because probably we don't make it clear, the trial courts don't make it clear their reasons for our rulings. The matter of transcript was brought before the court officially on April 1st, 1977. I believe it was praeciped on from the week before, it was put over at request of counsel for defendant to April 1st, 1977. Trial was set or has been set for sometime for today. This was a situation to face the court where the defendant had been in jail for many, many months, almost two years. The first time he came to this court was back in August of '75. The first trial was in August of '76, that's about eight months ago. If the request had been

made right after the first trial, things of this nature, it may be a different situation, but on April 1st when the request was made for transcript, this court stated that is was impossible to get a transcript out in that time. We had a jury trial set in this court, I think this is probably one of the busier courts in the state. * * * So I said that it was completely impossible to get a transcript out during this time. It wasn't a matter of money, it wasn't a matter the court felt superfluous in any way. The court didn't feel that. The court felt that it was important to have the testimony of an eye-witness, the only eye-witness who testified and the court felt very pleased that counsel did have that transcript, but as to the rest of the transcript of the trial, it took many, many days. The court did not mean that it was because of expense or because the court's time or anything like that. It was because of the impossibility of getting the transcript at that late date.

"Now as to continuance this morning, this is the first time that this court was asked for continuance. We had some difficulty drawing a jury before when—had difficulty. * * * We've had preparations, I've set aside two weeks of my time for this trial. For the first time in I don't know how long after trial is over, I'm going away for three weeks. * * * So if we delay the case today we'd probably be—I have two, three other murder cases pending. I have at least four armed robbery cases pending. Many of these people are in jail. I'm saying this would be another eight months on my schedule before we could try it. That's not fair, equally important is the right to a speedy trial for everybody, not just the defendant, but for the People and everybody. So the court would [remind] counsel, the court did have available the tape recordings. In fact, Mrs. Mitchell, the court clerk, was available so that she could play the tape recordings if anybody wanted to hear it. So the motion at this time for continuance would be denied."

One of defendant's co-counsel later moved for a mistrial on the ground that he did not have a complete transcript of defendant's first trial and

therefore could not effectively represent his client. He claimed to have orally requested the transcript at a pretrial conference on February 10, 1977, but neither the court nor the prosecutor could recall such a request on that date. The trial judge denied defendant's motion.

The United States Supreme Court in *Britt v North Carolina,* 404 US 226, 227; 92 S Ct 431; 30 L Ed 2d 400 (1971), held that in cases involving an indigent defendant's claim of right to a free transcript, two factors are relevant to a determination of need: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." (Footnote omitted.) As the Court pointed out, even absent specific allegations it can ordinarily be assumed that a transcript of a prior mistrial will be valuable to a defendant as a discovery device and as a tool for impeachment of prosecution witnesses at trial. The *Britt* Court affirmed the trial judge's refusal to grant the defendant a transcript of his mistrial prior to retrial where the defendant conceded that he had available an informal alternative which was substantially equivalent to a transcript.

We find *Britt* controlling and therefore affirm the trial court's denial of defendant's request for a complete transcript of his original trial. Under all of the facts and circumstances existing in the case at bar, defendant had available to him an alternative substantially equivalent to a transcript of the first trial. Neither *People v Hampton,* 89 Mich App 434; 280 NW2d 461 (1977), nor *People v Glass,* 38 Mich App 735; 197 NW2d 140 (1972), requires a contrary result, since in those cases the alternative available to the defendants was found not to

be substantially equivalent to a transcript of their earlier trials.

Defendant's third contention of error, concerning the denial of his motion for an adjournment until a transcript of his first trial could be furnished, is without merit in light of our disposition of the preceding issue. The remaining issues raised by defendant do not necessitate discussion.

Affirmed.

ALLEN, P.J., concurred.

T. M. BURNS, J. *(dissenting).* Respectfully, I must dissent.

I believe that the lower court ruling that would have permitted the prosecutor to impeach the defendant by reference to a 1963 felony in a 1977 trial was an abuse of discretion. The 14 years that separated these two offenses, the fact that they are similar in nature, the fact that the defendant was only 18 years of age when he was convicted of the second-degree murder and the fact that since that time he had led a socially acceptable, crime-free life, had obtained a bachelor's degree from Wayne State University and had entered into a master's degree program at Eastern Michigan University, indicate to me that the prejudicial nature of this evidence far outweighed its probative value. *People v Jackson,* 391 Mich 323, 335; 217 NW2d 22 (1974), *People v Farrar,* 36 Mich App 294, 301-303; 193 NW2d 363 (1971).

Further, I find significant in this case the fact that the defendant did not take the stand and testify on his own behalf. In cases where a defendant does not take the stand it is difficult to assess the impact of a trial judge's decision to permit impeachment of that defendant by reference to a prior felony. Nevertheless, where the case against

a defendant is close, as here, the effect on the decisional process if the accused does not testify for fear of impeachment by evidence of prior convictions may require that the impeachment evidence be excluded. *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967).

No eyewitness to the bank robbery could identify the defendant as one of its perpetrators. Only Officer Wilcox, who momentarily caught a glimpse of the driver of the automobile in which the bank robbers made their getaway, could do so. Thus, the case against the defendant turned in great part on the credibility of this police officer's identification. The events that occurred to the defendant on the day of the robbery and prior to his arrest are uniquely within his knowledge. The prejudice to him of not being able to tell his side of the story at trial is obvious. Therefore, I would find that the trial court committed reversible error in its ruling on defendant's motion to suppress.