PEOPLE v COWARD

Docket No. 50438. Submitted June 17, 1981, at Detroit.—Decided
November 3, 1981. Leave to appeal applied for.

Jeffrey Coward was convicted of breaking and entering an occu-
pied dwelling with intent to commit larceny, in Wayne Circuit
Court, Roman S. Gribbs, J. The defendant appeals alleging
that: (1) he was denied the effective assistance of counsel at
trial because his attorney failed to move to suppress identifica-
tion testimony which was the product of an illegal arrest and
confrontation; (2) the trial court erred in denying a motion to
strike the testimony of a witness who identified the defendant;
and (3) the trial court erred by denying a pretrial motion to
suppress evidence of his prior convictions. *Held:*

1. The defendant was not denied effective assistance of coun-
sel by his attorney's failure to move to suppress a security
guard's identification of the defendant. The police had probable
cause to arrest the defendant and the defendant's arrest was
not illegal.

2. The defendant's Sixth Amendment right to counsel was
not violated by the guard's identification of the defendant
where the defendant was not represented by counsel since the
identification was an on-the-scene identification within minutes
of the crime to determine whether there was a reasonable
likelihood that the suspect was connected with the crime or
merely an unfortunate victim of circumstances. Thus, there
was an independent basis to sustain the guard's in-court identi-
fication.

3. The trial court did not clearly abuse its discretion in
admitting evidence of the defendant's prior convictions. The
court recognized that it had discretion to exclude evidence of

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 24, 25, 31, 32, 48, 50.
[2, 3] 5 Am 2d, Arrest §§ 46, 48–50.
[4] 21A Am Jur 2d, Criminal Law §§ 802, 803, 820, 974.
[5] 81 Am Jur 2d, Witnesses §§ 327, 569 *et seq.*
[6] 29 Am Jur 2d, Criminal Law §§ 320, 321, 333.

prior convictions and weighed the factors for and against admissibility under the appropriate criteria.

Affirmed.

1. ARREST — ARREST WITHOUT WARRANT — STATUTES.

A police officer may arrest a person without a warrant when the officer has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person committed it; probable cause for an arrest has been defined as any facts which would induce a fair-minded person of average intelligence and judgment to believe that the suspected person has committed a felony; the facts upon which such belief is based must be present at the moment of arrest (MCL 764.15; MSA 28.874).

2. ARREST — ARREST WITHOUT WARRANT — POLICE RADIO BULLETINS — STATUTES.

A police officer may arrest a person without a warrant when the officer has received positive information broadcast from a recognized police or other governmental radio station or teletype that gives the officer reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it (MCL 764.15; MSA 28.874).

3. ARREST — POLICE RADIO BULLETINS — DESCRIPTIONS.

A police officer who has received by radio the details of the commission of a felony, including a description of the perpetrators, has probable cause to arrest persons matching that description who are traveling on a possible escape route from the scene of the crime shortly after its commission.

4. CRIMINAL LAW — RIGHT TO COUNSEL — EYEWITNESS IDENTIFICATION PROCEDURES.

Among the recognized justifications for absence of counsel for the defendant at a proceeding where an eyewitness to the crime identifies the defendant are (1) intelligent waiver of counsel by the accused, (2) emergency situations requiring immediate identification, and (3) prompt on-the-scene corporeal identifications within minutes of the crime.

5. WITNESSES — IMPEACHMENT — EVIDENCE — PRIOR CONVICTIONS.

It is not essential that a witness's prior conviction relate to honesty before evidence of it can be admissible for impeachment purposes.

6. EVIDENCE — PRIOR CONVICTIONS.

Admission of evidence of a defendant's prior conviction merely

because it is identical or similar to the charge being tried constitutes error requiring reversal of the defendant's conviction; however, the mere fact that the offenses are similar does not necessarily require exclusion of evidence of the prior conviction.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert J. Sheiko,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and E. E. BORRADAILE,* JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction for breaking and entering an occupied dwelling with intent to commit larceny contrary to MCL 750.110; MSA 28.305.

A recapitulation of the pertinent trial testimony evinces the following facts.

A plant security guard for Huron Valley Steel Company testified that at about 6:10 p.m. on July 14, 1979, he noticed a black male walking down the road in front of the guard's shack on the company premises. The guard's attention was drawn to the man's presence because "[i]t's normally a highly used highway. There's usually not that many people out there walking". The guard continued to observe the male until he came to a residence, walked past the residence, and then returned to the residence. The house was about 300 yards away from and in clear view of the guard's shack. The guard kept watching the man

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and noticed that he walked back to the house, walked up to the porch and walked back and forth on the front porch about three times. His view of the male was partially blocked, but he noticed the man's feet in a horizontal position, as if the man was sliding through a window into the house. At that time, the officer was observing the man's movements through binoculars. He described the man as a black male, about 6' 1" tall, weighing 160-180 lbs., with a tight Afro haircut, and wearing a red shirt and black pants. About five minutes later the suspect, whom the guard thought was the defendant but could not positively identify from that distance, came out of the house carrying what the guard thought was a pea green lawn chair. The suspect carried the article to an outbuilding and then 20 or 25 feet beyond the building to a grassy area where he deposited the object. The object was later found to be the homeowner's guns wrapped in a blanket.

As soon as the guard saw the man on the porch of the house, he became suspicious and called the Wayne County Sheriff. He reported a possible breaking and entering in progress by a 6' 1" black male, weighing between 160 and 180 lbs., with a tight Afro haircut and wearing a red shirt and black pants. Deputy Lawrence Chopp and his partner, Bill Fenech, received a radio call alerting them to a breaking and entering in progress. At that time, the officers were about two miles from the location and arrived at the location in about four minutes. As they approached the house, they got further information over the radio "that the subject that was inside of the house was now leaving the house. He was a black male wearing a red shirt and black pants".

When the officers arrived at the address they

noticed the defendant, who matched the radio description, running approximately 15 feet from the house.

The officers called to the defendant, asked him for identification, and when he could not produce any identification arrested him and placed him in the patrol car.

Within approximately five minutes after the sheriff's deputies arrested the defendant they brought him to the guard's shack to be identified by the security guard. The security guard testified at trial as follows:

"*A.* The Wayne County deputies brought him to the guard shack and they asked me if this was the same one.
"*Q.* I see.
"*A.* That's when I identified him as being the same one. I witnessed him the first time when he went up the road directly across from me which is approximately 50 or 60 yards at the most and when they brought him back I merely identified him by dress. There was no way I could identify scars or marks at that range."

On appeal, defendant raises three issues. We address them *seriatim.*

Defendant first contends that he was denied the effective assistance of counsel at trial because his attorney failed to move to suppress testimony identifying the defendant which was the product of an illegal arrest and confrontation. Defendant argues that his arrest was illegal because it was not based on probable cause and because the arrest resulted from police action which exceeded their authority to conduct an investigatory stop. This issue is not meritorious and seriously misrepresents the facts.

From the above statement of facts, it is clear

that the police had substantially more information upon which to base probable cause for an arrest than defendant asserts.

The ground rules for a felony arrest without a warrant are well settled. They were recently summarized in *People v Summers,* 407 Mich 432, 442; 286 NW2d 226 (1979):

"Statutory authority for an officer to arrest without warrant is set forth in MCL 764.15; MSA 28.874, which provides in relevant part:

" 'Any peace officer may, without a warrant, arrest a person

* * *

" '(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it.'

"Probable cause for an arrest has been defined as any facts which would induce a fair-minded person of average intelligence and judgment to believe that the suspected person has committed a felony. *People v Ward,* 226 Mich 45; 196 NW 971 (1924). Furthermore, the facts upon which such belief is based must be present at the moment of arrest. *People v Stewart,* 232 Mich 670; 206 NW 337 (1925).

"Therefore, in reviewing a claim that a police officer lacked probable cause to arrest, the reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. Each case must be analyzed in light of the particular facts confronting the arresting officer. *People v Harper,* 365 Mich 494; 113 NW2d 808 (1962)."

In addition, the arrest statute provides:

"A peace officer may, without a warrant, arrest a person in the following situations:

* * *

" '(f) When the peace officer has received positive information broadcast from a recognized police or other governmental radio station, or teletype, as may afford the peace officer reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it.' " MCL 764.15; MSA 28.874.

It is clear that an authorized police bulletin advising the police that a felony has been committed, when coupled with other facts and circumstances, provides probable cause for an arrest without a warrant. See, for example, *People v Daniels,* 50 Mich App 754; 213 NW2d 780 (1973), *lv den* 392 Mich 765 (1974), *People v Bentley,* 47 Mich App 150; 209 NW2d 333 (1973), *People v Knight,* 41 Mich App 293; 199 NW2d 861 (1972), *People v Scott,* 23 Mich App 568; 179 NW2d 255 (1970), *lv den* 383 Mich 791 (1970), *People v Johnnie Mae Jones,* 12 Mich App 369; 163 NW2d 22 (1968), see, also, *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). Hence, the rule has developed that:

"A police officer who has received by radio the details of the commission of a felony, including a description of the perpetrators, has probable cause to arrest persons matching that description who are traveling on a possible escape route from the scene of the crime shortly after its commission." *People v Knight,* 41 Mich App 293, 294; 199 NW2d 861 (1972), accord: *People v Scott, supra.*

Each of the cases cited in this analysis bears a striking similarity to the facts in this case on several points. Most of the cases cited involved a police response to a radio bulletin advising of a felony in progress, the sighting of the alleged felon, the felon's similarity to the description

transmitted over the radio and some other overt, action, such as flight by the felon or other furtive gestures.

It is therefore concluded that the police had probable cause to arrest the defendant in this case. In fact, the only better probable cause situation which could have existed under any circumstances would have been if the officers had actually seen the defendant commit the felony. There is no merit to defendant's probable cause argument and, therefore, it is unnecessary to consider his sub-argument that the police exceeded their authority to conduct an investigatory stop. The overall conclusion is that the defendant was not denied effective assistance of counsel by the attorney's failure to move to suppress the guard's identification.

Defendant next contends that the trial court erred in its denial of the motion to strike the testimony of the security guard identifying the defendant. Defendant argues that the confrontation between defendant and the security guard, when the police returned with him to seek verification from the guard that defendant was the person that the guard had described, was violative of defendant's Sixth Amendment rights since defendant was not represented by counsel. Defendant, accordingly, further argues that because of this infirmity, the in-court identification by the security guard could not be received into evidence since there existed no independent basis as set forth in *People v Kachar,* 400 Mich 78, 95; 252 NW2d 807 (1977), by which the guard could make an in-court identification. We disagree.

There can be no good faith argument that Michigan courts have not zealously guarded a defendant's right to be represented by counsel at pre-

indictment lineups. *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974), *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973).

However, the *Franklin Anderson* Court, while establishing the guidelines for identification procedures, recognized that there exists legitimate reasons for the absence of counsel.

"Among the recognized *justifications* for absence of counsel at eyewitness identification procedures are: (1) 'intelligent' waiver of counsel by the accused, see, *e.g., People v Shipp,* 21 Mich App 415 [175 NW2d 529] (1970); (2) emergency situations requiring immediate identification, see, *e.g., People v Adams,* 19 Mich App 131, 133 [172 NW2d 547] (1969); (3) *prompt, 'on-the-scene' corporeal identifications within minutes of the crime,* see, *e.g., Russell v United States,* 133 US App DC 77; 408 F2d 1280 (1969)." *People v Franklin Anderson, supra,* 187, fn 23. (Emphasis added.)

This Court has recognized and applied this exception in numerous cases where the police promptly have returned with the defendant to seek on-the-scene identification. *People v Stanton,* 97 Mich App 453; 296 NW2d 70 (1980), *People v Tucker,* 86 Mich App 608; 273 NW2d 498 (1978), *lv den* 406 Mich 964 (1979), *People v Wilkerson,* 63 Mich App 470; 234 NW2d 571 (1975), *People v Johnson,* 59 Mich App 187; 229 NW2d 372 (1975), *People v Curtis Williams,* 57 Mich App 612; 226 NW2d 584 (1975), *People v Foster,* 51 Mich App 213; 214 NW2d 723 (1974), *lv den* 392 Mich 778 (1974), *People v Wright,* 38 Mich App 427; 196 NW2d 839 (1972), *lv den* 388 Mich 758 (1972). Defendant's attempts to distinguish these cases are unpersuasive. There is nothing in this record to suggest that the police officers were not attempt-

ing, in good faith, to decide whether there was a reasonable likelihood that the suspect was connected with the crime or merely an unfortunate victim of circumstances. To the extent that *People v Dixon,* 85 Mich App 271, 276; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979), holds otherwise, we disagree for the reasons set forth in Judge BASHARA's dissent.

This determination that defendant's Sixth Amendment rights were not violated renders moot the corollary issue as to whether an independent basis exists to sustain the guard's in-court identification.

As his remaining issue, defendant argues that the trial court erred by denying the pretrial motion to suppress evidence of defendant's prior convictions.

Prior to trial, counsel moved to exclude evidence of defendant's prior convictions: 1976, arson of a house; 1977, breaking and entering of an auto; and 1977, receiving and concealing stolen property under $100 (a misdemeanor). The trial court denied the motion, saying:

"*The Court:* Well, I have the *Jackson* criteria here. I am aware of the holding of the *Kelley* case, but I wanted to review the criteria in *People v Jackson.*

"Would you get that? It's 391 Mich. Well, having in mind the criteria and the guidelines set forth in the *People v Jackson* which addresses my discretion, being aware of that and being aware of the nature of the prior offenses and having in mind if he does not testify from fear of impeachment of prior convictions, he is aware that there are two alibi witnesses that the defendant intends to present, should the defendant take the stand I will permit the prosecutor to use the three convictions that he has cited namely arson in a dwelling house in 1976, a breaking and entering an auto in

1977 and receiving and concealing stolen property under the value of $100 in 1977. The latter, though a misdemeanor, does involve theft as does this charge breaking and entering. I have in mind that it was a misdemeanor, but under rule 609 if the prosecutor chooses to impeach the defendant's credibility with the conviction of receiving and concealing stolen property under $100 that he may do so."

In this issue, defendant contends that the trial court committed error requiring reversal by allowing evidence of his prior convictions to be admitted. Evidence of the arson conviction was inadmissible, defendant argues, because that crime is not probative of a tendency to falsify. Further, defendant argues, the trial court admitted evidence of the two other convictions *because* they were similar to the offense charged. He reasons that the prejudicial effect of their admission outweighed their probative value. Thus, the trial court abused its discretion in allowing evidence of those prior convictions to be admitted because, as a result of the court's ruling, plaintiff failed to testify. Finally, defendant argues that the court's error was not harmless because, if evidence of the convictions had not been admitted, defendant would have testified in support of an alibi defense, a defense which was substantial because it was corroborated by the testimony of another witness.

There was no error in admitting evidence of defendant's prior conviction of arson. It is not necessary, as defendant contends, that a prior conviction relate to honesty before evidence of it can be admissible for impeachment purposes. *People v Lytal,* 96 Mich App 140; 292 NW2d 498 (1980), *People v Hughes,* 93 Mich App 333; 287 NW2d 226 (1979), *People v Cash,* 80 Mich App 623; 264 NW2d 78 (1978), *rev'd on other grounds* 406

Mich 930 (1979), *People v Payne,* 27 Mich App 133; 183 NW2d 371 (1970).

Nor was it error to admit evidence of defendant's prior conviction of receiving and concealing stolen property. First of all, contrary to defendant's contention here, the trial court did not admit evidence of that conviction precisely because it was similar to the present charge. Second, receiving and concealing stolen property does bear on the issue of honesty. See *People v Bennett,* 85 Mich App 68; 270 NW2d 709 (1978), *lv den* 405 Mich 835 (1979). Third, the prior conviction was not similar to the charge for which defendant was on trial. Finally, we are not persuaded that the lower court clearly abused its discretion by admitting evidence of defendant's prior conviction for breaking and entering an automobile. The issue is based on the assumption that the court admitted evidence of the prior conviction precisely because it was similar to the breaking and entering conviction for which defendant was standing trial. However, nothing in the ruling (quoted above) suggests that the trial court admitted evidence of the conviction because of its similarity to the charge on trial.

Certainly, it is error requiring reversal to admit evidence of a prior conviction *because* it is identical or similar to the charge being tried. Similarity of offenses is a fact weighing against admissibility. *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), *People v Bolden,* 98 Mich App 452; 296 NW2d 613 (1980), *lv den* 410 Mich 855 (1980), *People v Graves,* 98 Mich App 112; 296 NW2d 4 (1979), *People v Worden,* 91 Mich App 666; 284 NW2d 159 (1979). However, the mere fact that the offenses are similar does not necessarily require exclusion of evidence of a prior conviction. See, for

example, *People v Lytal, supra, People v Hughes, supra, People v Worden, supra, People v Gunter,* 76 Mich App 483; 257 NW2d 133 (1977). What is necessary is that the trial court recognize that it has discretion to exclude evidence of prior convictions and that it exercise that discretion by weighing the factors for and against admissibility under the criteria of *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1980). Here, it is clear that the court recognized its discretion. In addition, it is apparent that it attempted to do some kind of balancing of the factors set out in *Jackson.* While the reasons are not as full and clear as they might have been, no clear abuse of discretion is shown.

Defendant's conviction is affirmed.