PEOPLE v PUROFOY

PEOPLE v WALKER

Docket Nos. 52122, 53292. Submitted March 3, 1982, at Detroit.—
Decided May 20, 1982. Leave to appeal applied for.

Malcolm C. Purofoy and Hardy A. Walker were convicted of
armed robbery and possession of a firearm during the commis-
sion of a felony following a joint jury trial in Wayne Circuit
Court, William Leo Cahalan, J. Defendants each appeal and the
appeals were consolidated. *Held:*

1. The trial court did not abuse its discretion in deciding that
the police had probable cause to stop the car in which the
defendants were riding and to arrest the defendants without a
warrant.

2. The police properly held a prompt on-the-scene corporeal
identification of the defendants without counsel for the defen-
dants being present.

3. The instruction to the jury on aiding and abetting was
sufficient when read in the context of the whole charge to the
jury.

4. The trial court properly permitted the admission into
evidence of defendant Purofoy's oral confession with the dele-
tion of the references to defendant Walker.

5. Since defendant Purofoy's petition to remove the case to

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 2, 34, 45.

[2, 3] 5 Am Jur 2d, Arrest § 25.

[3] 5 Am Jur 2d, Appeal and Error §§ 772, 774.

[4, 5, 12] 21A Am Jur 2d, Criminal Law § 802.

[5, 12] 21A Am Jur 2d, Criminal Law § 803.
Admissibility of evidence of lineup identification as affected by
allegedly suggestive lineup procedures. 30 ALR3d 487.

[6] 75 Am Jur 2d, Trial § 724.

[7, 8] 29 Am Jur 2d, Evidence §§ 539, 540.

[9, 11] 32B Am Jur 2d, Federal Practice and Procedure §§ 2491, 2492.

[10] 66 Am Jur 2d, Records and Recording Laws § 83.

[11] 32B Am Jur 2d, Federal Practice and Procedure §§ 2511, 2512.
Effect upon jurisdiction of state court of 28 USC § 1446 relating to
removal of cause to federal court. 25 ALR2d 1045.

federal court was not filed with the circuit court clerk within the 30-day period after arraignment mandated by Congress, the circuit court was not divested of jurisdiction to enter judgment and sentence the defendant.

Affirmed.

R. M. MAHER, P.J., dissented. He would hold that identification of defendants on the scene without the assistance of counsel was improper and that the subsequent search pursuant to a warrant was tainted by the improper identification procedure. He would reverse.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — AUTOMOBILES.

The following rules apply with respect to stopping, searching and seizing of motor vehicles: (1) reasonableness is the test that is to be applied for both the stop of, and the search of, moving motor vehicles, (2) said reasonableness will be determined from the facts and circumstances of each case, (3) fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved than if a house or a home were involved, and (4) a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police.

2. ARREST — PROBABLE CAUSE — APPEAL.

A court, in reviewing a claim that a police officer lacked probable cause to arrest without a warrant, must ascertain whether the facts available to the officer at the time of the arrest would justify a fair-minded person of average judgment and intelligence in believing that the suspected person had committed a felony (MCL 764.15; MSA 28.874).

3. ARREST — PROBABLE CAUSE — APPEAL.

A decision of a trial judge that the prosecutor has met the burden of establishing that an arrest without a warrant was supported by probable cause will be reversed only if it constitutes an abuse of discretion.

4. CRIMINAL LAW — EYEWITNESS IDENTIFICATION — RIGHT TO COUNSEL.

The recognized justifications for absence of counsel at eyewitness identification procedures include: (1) "intelligent" waiver of counsel by the accused; (2) emergency situations requiring immediate identification; and (3) prompt, "on-the-scene" corporeal identifications within minutes of the crime.

5. Criminal Law — Eyewitness Identification.

   Evidence of an "on-the-scene" corporeal identification of a defendant by the victim, even though obtained through such a procedure which may be suggestive, is properly admitted where the identification occurred within minutes of the defendant's arrest and thereby permitted the victim to confirm or deny the identification while his memory was fresh and accurate.

6. Criminal Law — Jury Instructions — Aiding and Abetting — Felony-Firearm.

   A specific instruction relative to aiding and abetting in the possession of a firearm during the commission of a felony need not be given where the general instruction on aiding and abetting encompasses the elements of aiding and abetting relative to the felony-firearm charge; there is no duty to reiterate the elements of aiding and abetting after the instruction as to each of the charged offenses and lesser included offenses.

7. Criminal Law — Joint Trial — Evidence — Confessions.

   It is accepted procedure in joint trials, involving codefendants, to allow a prosecutor to introduce a lawfully acquired confession of one of the defendants, provided any reference to other defendants is deleted.

8. Criminal Law — Joint Trial — Evidence — Confessions.

   A defendant being tried jointly with a codefendant does not, in the absence of a showing of prejudice, have a right to have his whole confession introduced when portions of the confession also implicate the nonconfessing codefendant.

9. Courts — Jurisdiction — Removal to Federal Court — Judicial Construction.

   The right to remove an action from state to federal court is statutory; therefore, the procedure for removal of actions adopted by Congress, including the temporal limitations relative to the filing of a petition for removal, are mandatory and are to be strictly construed (28 USC 1446[c][1]).

10. Words and Phrases — Filed.

   A paper or document is filed when it is delivered to and received by the proper officer to be kept on file.

11. Criminal Law — Courts — Jurisdiction — Removal to Federal Court.

   A state court is not divested of jurisdiction to enter a conviction and sentence where the petition to remove the criminal action to federal court has been filed with the clerk of the state court

more than the statutory period of 30 days after arraignment
(28 USC 1446[c][1]).

Dissent by R. M. Maher, P.J.

12. Criminal Law — Eyewitness Identification.

*The police, where they have more than a mere suspicion that the
person in custody has committed the crime, may not conduct
an on-the-scene corporeal identification of a suspect who is not
represented by counsel, but must take the suspect to the police
station and conduct a line-up there.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Carolyn Schmidt* and
*Robert J. Sheiko,* Assistants Prosecuting Attorney,
for the people.

*Lynn Chard,* Assistant State Appellate Defender,
for defendant Purofoy on appeal.

*Douglas Hamel* and *Frank Singer,* for defendant
Walker.

Before: R. M. Maher, P.J., and Beasley and P. J.
Marutiak,* JJ.

Per Curiam. On May 21, 1980, defendants, Mal-
colm C. Purofoy and Hardy Alison Walker, were
convicted by a jury of armed robbery, in violation
of MCL 750.529; MSA 28.797, and possession of a
firearm in the commission of a felony, in violation
of MCL 750.227b; MSA 28.424(2). Defendant Puro-
foy was sentenced to not less than 7 nor more
than 15 years in prison on the armed robbery
count. Defendant Walker was sentenced to not less
than 6 nor more than 15 years in prison on the
armed robbery count. Both defendants were sen-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

tenced to two years on the felony-firearm counts, to run consecutively with the armed robbery sentences. Defendants appeal as of right.

The record reveals that on the evening of March 8, 1980, the complainant, while in the hallway of his Southgate apartment, was approached by two black males, one of whom brandished a gun, the other a knive. As a result of the individual with the knife inquiring if he had any money, complainant gave him his wallet. Immediately after the men fled from the apartment complex, complainant telephoned the Southgate police, describing the age, size, gender and attire of his assailants.

A Wyandotte police officer, Charles Brown, testified that while he and his partner were on patrol duty on the evening of March 8, 1980, they received a radio broadcast from the Southgate police which requested all police vehicles in the vicinity to be on the lookout for two black males who had robbed a man at the Village Town Apartments in Southgate. The males were described as respectively wearing a tan cap and a leather hood.

Upon driving to the general area of the armed robbery, the officers observed a tan vehicle which contained two black males, one of whom was wearing a tan cap. The occupants of this vehicle appeared startled at the sight of the police vehicle, whereupon the officers, while following the tan vehicle, requested on the police radio further information concerning the robbery. The additional description related that the individual with the tan cap was wearing a denim jacket, the other man was wearing a brown leather hood, both men were in their twenties, and that one was taller than the other.

After noticing that the descriptions coincided with the two men in the tan vehicle, Officer Brown

and his partner stopped the automobile, asking the men to exit therefrom. A flashlight search of the automobile did not unearth any weapons or fruits of the alleged robbery.

The automobile in which defendants were occupants was turned over to Officer Larry Mylock of the Southgate police. At the direction of the Southgate police, Officer Brown and his partner transported the men to the scene of the robbery where complainant identified the two men as his assailants, while they were handcuffed and in the back seat of the patrol car.

The first issue that we address is one raised by both defendants and concerns the stopping of defendants' automobile without a warrant. Defendants claim that the Wyandotte police officers lacked probable cause to stop and arrest them because defendants were not apprehended at the scene of the offense, their behavior was not suspicious, and the flashlight search of their automobile did not reveal any weapons or evidence of the crime.

The trial court ruled that the police officers had probable cause to stop the vehicle and arrest defendants based on the nearness of the location of the robbery to the area in which the police observed defendants, Officer Brown's testimony that the street on which defendants' automobile was traveling was a logical exit road from the location of the robbery, the startled expressions of defendants upon observing the police vehicle, and the officers' observations of defendants' clothing.

In *People v Whalen*,[1] the Supreme Court delineated the standard applicable to the stopping, searching and seizing of motor vehicles and their contents:

---

[1] 390 Mich 672, 682; 213 NW2d 116 (1973).

"1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.

"2. Said reasonableness will be determined from the facts and circumstances of each case.

"3. Fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.

"4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police."

Applying this standard, we find that the Wyandotte police officers' stop of defendants' vehicle was reasonable and justified under the circumstances. The general description of the assailants coincided with the occupants of the automobile.

MCL 764.15; MSA 28.874 governs arrests without a warrant and provides as follows:

"(1) A peace officer may, without a warrant, arrest a person in the following situations:

                          *   *   *

"(c) When a felony in fact has been committed and the peace officer has reasonable cause to believe that the person has committed it.

"(d) When the peace officer has reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it.

                          *   *   *

"(f) When the peace officer has received positive information broadcast from a recognized police or other governmental radio station, or teletype, as may afford the peace officer reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it."

In reviewing defendants' claim that the police

officers lacked probable cause to make the arrest without a warrant, it is the function of this Court to ascertain whether the facts available to the officers at the moment of the arrest would justify a fair-minded person of average judgment and intelligence in believing that the suspected persons had committed a felony.[2]

In the within matter, the Wyandotte police officers received an authorized police bulletin that a felony had been committed. This communication, when considered in conjunction with defendants' similarity to the description transmitted over the radio, the proximity of defendants' vehicle to the scene of the robbery and defendants' reactions upon observing the police vehicle, justified the arrest of defendants.

Once a trial judge has found that the prosecution has satisfied the burden of establishing that an arrest without a warrant is supported by probable cause, his ruling will be reversed only if it constitutes an abuse of discretion.[3] The trial judge herein did not abuse his discretion in determining that the officers had probable cause.

Defendants jointly contend that the complainant's on-the-scene identification denied them due process, claiming that, once arrested, they had the right to counsel and to all required identification procedures. Alternatively, defendants assert that, even if they were not entitled to counsel at the on-the-scene identification, the procedure was unduly suggestive and denied defendants due process of law stemming from the identification made while they were handcuffed in the back seat of the patrol car. Furthermore, they allege that this

[2] *People v Harper,* 365 Mich 494, 500; 113 NW2d 808 (1962); *People v Coward,* 111 Mich App 55, 60; 315 NW2d 144 (1981).

[3] *People v Carey,* 110 Mich App 187, 194; 312 NW2d 205 (1981); *People v Davenport,* 99 Mich App 687, 691; 299 NW2d 368 (1980).

identification was an essential component of the affidavit in support of the search warrant of defendants' automobile, which resulted in the discovery of a gun, knife and the victim's wallet.

After a *Wade*[4] hearing on May 14, 1980, the trial court found that the return of defendants to the scene of the robbery for identification did not violate defendants' right to counsel and, therefore, he denied the motion to suppress the identification and the fruits of the search.

In *People v Anderson*,[5] the Supreme Court enumerated three exceptions to the requirement of counsel at pre-indictment custodial identification procedures:

> "Among the recognized *justifications* for absence of counsel at eyewitness identification procedures are: (1) 'intelligent' waiver of counsel by the accused, see *e.g.*, *People v Shipp*, 21 Mich App 415 (1970); (2) emergency situations requiring immediate identification, see *e.g.*, *People v Adams*, 19 Mich App 131, 133 (1969); (3) prompt, 'on-the-scene' *corporeal* identifications within minutes of the crime, see *e.g.*, *Russell v United States*, 133 US App DC 77; 408 F2d 1280 (1969)."

In the matter at bar, defendants, subsequent to their arrest, were immediately returned to the robbery scene for identification. We addressed this issue in *People v Tucker:*[6]

> "An on-the-scene identification is a well-recognized

---

[4] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[5] 389 Mich 155, 187, fn 23; 205 NW2d 461 (1973).

[6] 86 Mich App 608, 611; 273 NW2d 498 (1978), *lv den* 406 Mich 964 (1979). Accord *People v Coward, supra; People v Wilkerson*, 63 Mich App 470, 472-473; 234 NW2d 571 (1975); *People v Johnson*, 59 Mich App 187, 189-190; 229 NW2d 372 (1975); *People v Wright*, 38 Mich App 427, 431; 196 NW2d 839 (1972), *lv den* 388 Mich 758 (1972). *Contra, People v Dixon*, 85 Mich App 271, 276; 271 NW2d 196 (1978).

exception to the rule requiring counsel during a corporeal identification once a suspect is in custody. *People v Curtis Williams,* 57 Mich App 612; 226 NW2d 584 (1975). The rationale behind the exception is that such confrontations are reasonable police practices since they permit the police to immediately determine whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance. Defendant's contention that counsel was required is unfounded."

While we agree that the custodial identification may have been suggestive, we nonetheless believe that the procedure was reasonable. Inasmuch as the identification occurred within minutes of defendants' arrest, it enabled the complainant to confirm or deny the identification while his memory was fresh and accurate. Additionally, a police procedure such as was employed here results in innocent suspects being expeditiously released.

Defendant Walker asserts that his conviction for possession of a firearm in the commission of a felony should be reversed because the trial judge, in instructing the jury, gave only a single instruction on aiding and abetting at the conclusion of his instruction on the principal charge, the lesser included offenses and the felony-firearm charge. Defendant maintains that *People v Johnson*[7] requires a specific aiding and abetting instruction to accompany the elements of the offense of felony-firearm. In *Johnson,* the Supreme Court said:[8]

"To convict one of aiding and abetting the commission of a separately charged crime of carrying or having a firearm in one's possession during the commission of a felony, it must be established that the defendant pro-

---

[7] 411 Mich 50; 303 NW2d 442 (1981).

[8] *Id.,* 54.

cured, counselled, aided, or abetted and so assisted in obtaining the proscribed possession, or in retaining such possession otherwise obtained."

Here, the trial judge gave the following instruction:

"Now it is charged in this case that the defendants either directly committed the crimes charged, that is, robbery armed or any of the crimes included in robbery armed and possession of a firearm in the commission of a felony or that he aided or assisted the other or another in the commission of those crimes.

"Now all persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be guilty of the principal offense or as an aider or abettor."

The foregoing instruction was preceded by an enumeration of the elements of the aiding and abetting statute, as contained in proposed CJI 8:1:01 *et seq.*

We do not find that *Johnson* requires a specific instruction on aiding and abetting for a felony-firearm charge. The trial judge's giving of the elements of aiding and abetting after a reading of the charges satisfied the principle set forth in *Johnson*. A trial judge is not required to reiterate the elements of aiding and abetting after each of the instructions on the charged offenses and lesser included offenses.

Defendant Purofoy claims that the admission into evidence of his oral confession was error. At a *Walker*[9] hearing conducted prior to trial, the trial judge ruled that the statement given to Officer Lokuta of the Southgate Police Department was voluntarily made. Defendant Purofoy contends

---

[9] *People v Walker (On Remand),* 374 Mich 331; 132 NW2d 87 (1965).

that the statement should not have been introduced into evidence, for it was not reduced to writing, and it was edited by the trial court. The statement was edited to delete any reference to the codefendant Walker.

In joint trials involving codefendants, it is an approved procedure to allow a prosecutor to introduce a lawfully obtained confession of one of the defendants, as long as any reference to the other codefendants is eliminated.[10]

In *Bruton v United States*,[11] the Supreme Court held that the admission of a nontestifying codefendant's statement implicating a defendant at a joint trial constituted a denial of the right of confrontation when there was no effective means of cross-examining the codefendant concerning the statement.

In accordance with *Bruton* and *People v Shirk*,[12] a defendant being tried jointly with a codefendant does not, absent a showing of prejudice, have a right to have his total confession introduced when segments of the confession also implicate the non-confessing codefendant. We do not find that defendant Purofoy was prejudiced by the editing of his oral statement.[13] The trial court properly exercised its discretion in eliminating any reference to defendant Purofoy's codefendant.[14]

Defendant Purofoy also claims that his convictions must be reversed because at the time of the trial court's entry of the judgment of conviction

[10] *People v Ronald Smith*, 27 Mich App 442, 444; 183 NW2d 584 (1970); *People v Miller*, 88 Mich App 210, 221; 276 NW2d 558 (1979), *rev'd on other grounds* 411 Mich 321; 307 NW2d 335 (1981).

[11] 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

[12] 383 Mich 180; 174 NW2d 772 (1970).

[13] *People v Macklin*, 46 Mich App 297, 303; 208 NW2d 62 (1973).

[14] *People v Brown*, 76 Mich App 733, 740; 257 NW2d 233 (1977); *People v Macklin, supra.*

and sentence his petition for removal to the federal court was pending. The procedures for removal are controlled by 28 USC 1446:

"(c)(1) A petition for removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the petitioner leave to file the petition at a later time.

"(2) A petition for removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds which exist at the time of the filing of the petition shall constitute a waiver of such grounds, and a second petition may be filed only on grounds not existing at the time of the original petition. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

"(3) The filing of a petition for removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the petition is first denied."

Defendant based his removal petition of May 5, 1980, on claims of intentional misidentification by the "white" witness, his representation by a "white" attorney and racial discrimination in Wayne County's jury selection.

In this matter, the arraignment on the information was conducted on April 8, 1980. The proof of service attached to the petition for removal was dated May 5, 1980, and time-stamped by the Wayne County clerk on May 12, 1980. At a pretrial motion on May 8, 1980, the trial judge examined a copy of the petition for removal, but refused to act on it unless he received an order from the federal court removing the case from the state court's jurisdiction. The judgment of conviction

and sentence were entered on June 4, 1980; the federal district court summarily dismissed defendant's removal petition on June 23, 1980.

The crux of this issue is whether defendant Purofoy complied with the statutory provisions for removal of actions to federal court as directed by 28 USC 1446(c)(1).

The right of removal from state to federal court is statutory and, therefore, can only be implemented in the method designated by Congress.[15] In *Percell's, Inc v Central Telephone Co,*[16] the federal district court stated:

"While the time limitations of 28 USC 1446(b) are not jurisdictional, they are mandatory and are to be strictly construed when asserted by a party. See *United States ex rel Walker v Gunn,* 511 F2d 1024 (CA 9, 1975), *cert den* 423 US 849 (1975); 14 Wright & Miller, Federal Practice & Procedure, § 3732."

In *People v Wynn,*[17] the petition for removal was filed and service effected on the trial court prior to the commencement of trial. The federal statute in effect at the time provided for petition for removal of a criminal prosecution to be filed at any time prior to trial. The *Wynn* Court voided the defendant's conviction, holding that the circuit court, upon receipt of the removal petition, was without jurisdiction to try the case.

We note that the 1977 amendment to the federal statute[18] allows a state court to conduct a trial while a removal petition is pending, but that a judgment of conviction shall not be entered until a denial of the petition by the federal court.

---

[15] *People v Densmore,* 87 Mich App 434, 438; 274 NW2d 811 (1978).

[16] 493 F Supp 156, 157 (D Minn, 1980).

[17] 73 Mich App 713; 253 NW2d 123 (1977).

[18] 28 USC 1446(c)(3).

According to the proof of service, the removal petition was mailed to the federal and state courts 27 days subsequent to defendant Purofoy's circuit court arraignment, and the petition was brought to the trial court's attention 30 days subsequent to the arraignment. However, it was not received and time-stamped by the Wayne County clerk until 34 days after defendant Purofoy's arraignment. As indicated previously, 28 USC 1446 requires "a petition for removal of a criminal prosecution *shall be filed not later than 30 days after the arraignment".*

In *People v Madigan,*[19] the Supreme Court defined the verb "filed":

"It is a well recognized general rule that a paper or document is filed, so far as the rights of the parties are concerned, when it is delivered to and received by the proper officer to be kept on file, and the indorsement of the officer with whom it is filed is but evidence of the time of filing."

Similarly, "filed" is defined in 36A CJS, pp 396-398 as follows:

"The word 'filed' is customarily used in connection with judicial documents, and in practice the term has a well-defined meaning, signifying delivered to the proper officer and by him received to be kept on file, or in his official custody; delivered into the actual custody of the officer designated by the statute, to be kept by him as a permanent record of his office.

"The word carries with it the idea of permanent preservation of the thing so delivered and received that it may become a part of the public record, and includes the idea that the paper is to remain in its proper order on the file in the office.

"Generally, the word 'filed' applies only where there

---

[19] 223 Mich 86, 89; 193 NW 806 (1923).

is a writing, and where the paper, instrument, or document has been actually delivered, rather than merely deposited in the mail. Thus a paper may be regarded as 'filed' only at the time it is delivered to, and received by, the designated officer, and it is considered as 'filed' only when it is delivered to the proper official and by him received and filed." (Footnotes omitted.)

We hold that defendant Purofoy did not satisfy the mandatory requirements of filing his removal petition not later than 30 days after arraignment. We note that Congress chose to use the word "filed" rather than mailed. Thus, the trial court continued to have jurisdiction in the matter and properly entered defendant Purofoy's conviction and sentence. We also note that, as previously indicated, the federal court summarily dismissed the removal petition of defendant Purofoy.

Affirmed as to both defendants.

R. M. MAHER, P.J. *(dissenting)*. I respectfully dissent. When the police have more than a mere suspicion that a person in custody has committed a particular crime, they cannot return the suspect to the scene of the crime but must take him or her to the police station and conduct a line-up at which the suspect is represented by counsel.[1] The *People v Anderson*[2] exception cited by the majority is inapplicable unless the police lack probable cause for a formal arrest.

Since the police obtained a search warrant on the basis of this tainted identification procedure and since incriminating evidence obtained thereby was introduced at trial, reversal is required.

[1] See *People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978); *People v Starks,* 107 Mich App 377, 380; 309 NW2d 556 (1981).

[2] 389 Mich 155; 205 NW2d 461 (1973).

My resolution of this issue renders discussion of defendants' remaining contentions unnecessary.

I would reverse.