## PEOPLE v JEFFREY JOHNSON

Docket No. 44375. Submitted November 13, 1981, at Detroit.—Decided March 2, 1982.

Jeffrey W. Johnson was found guilty by a jury of first-degree murder, two counts of assault with intent to commit murder and felony-firearm in Recorder's Court of Detroit. The court, George W. Crockett, III, J., dismissed the felony-firearm count and convicted defendant of first-degree murder and assault with intent to commit murder. Defendant appeals by leave granted. *Held:*

1. The defendant sought to introduce testimony about threats alleged to have been made by one of the complaining witnesses to the brother of a defense witness in an alleged attempt to keep testimony favorable to the defendant from being presented. The testimony in question was lacking in probative value, irrelevant and a waste of time, since there was no direct link to the defendant.

2. Latent fingerprints found on a shotgun near the scene were destroyed after 30 days by the police, as was their custom, because they lacked a sufficient number of points of comparison. Defense counsel never asked to examine the prints or have them preserved. A loss of evidence which occurs before a defense request for the evidence does not mandate reversal of a conviction where there is no showing of bad faith or intentional suppression.

3. The trial court is not required to expressly recognize its discretion in allowing the admission of evidence of a prior bad

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 175.
[2] 21A Am Jur 2d, Criminal Law § 1021.
    29 Am Jur 2d, Evidence § 177.
[3] 4 Am Jur 2d, Appeal and Error § 516.
    29 Am Jur 2d, Evidence § 298.
[4] 29 Am Jur 2d, Evidence §§ 324-326.
[5] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[6, 7] 40 Am Jur 2d, Homicide §§ 45, 52.
[8] 29 Am Jur 2d, Evidence §§ 723, 724.
[9] 81 Am Jur 2d, Witnesses § 2.

act of the defendant and did not err in admitting the evidence because it directly concerned the defendant and the deceased and was relevant to show motive and intent to murder.

4. There was sufficient evidence of premeditation and deliberation to support a conviction of first-degree murder.

5. The defendant was not denied a fair trial by the prosecutor's use on rebuttal of the testimony of an unendorsed alleged res gestae witness because the defendant did not move to endorse the witness in question during the trial, nor did he object at trial to this witness being called as a rebuttal witness although an objection was made to the calling of the only other rebuttal witness, and because defendant does not claim that the witness should have been endorsed at trial.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — LOST EVIDENCE.

A loss of evidence which occurs before a defense request for the evidence does not mandate reversal of a conviction where there is no showing of bad faith or intentional suppression.

2. CRIMINAL LAW — EVIDENCE — DESTRUCTION OF EVIDENCE.

Destruction of fingerprint evidence in accordance with a policy of destroying the evidence after 30 days when it has been determined that a positive matchup cannot be made does not mandate reversal where there is no evidence of intentional misconduct, suppression or bad faith.

3. CRIMINAL LAW — SIMILAR-ACTS EVIDENCE — COURTS.

A trial court, where requested by a defendant or defense counsel, should explain on the record how it reached a determination that the probative value of similar-acts evidence outweighed its prejudicial effect, but, absent such request, failure by a trial court to explain its rationale should not constitute error.

4. CRIMINAL LAW — EVIDENCE — PRIOR ACTS.

Testimony regarding prior acts may be admitted as evidence to show a defendant's motive and intent, if the evidence is also relevant.

5. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

A failure to make a timely objection to a jury instruction in a criminal case precludes appellate review in the absence of manifest injustice.

6. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

Premeditation and deliberation characterize a thought process

undisturbed by hot blood; some orderly reflection is required for premeditation and deliberation and, while the time period is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look.

7. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

Factors to be considered when determining whether a defendant in a murder case had an opportunity to give his actions a "second look", thus allowing a finding of premeditation and deliberation, include the previous relationship between the parties, the defendant's actions prior to the killing, the circumstances of the killing itself, and the defendant's conduct after the killing.

8. CRIMINAL LAW — RES GESTAE WITNESSES.

A res gestae witness to a crime is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense.

9. CRIMINAL LAW — RES GESTAE WITNESSES — NONPRODUCTION OF WITNESSES — PRESERVING QUESTION.

Failure of a defendant to move in the trial court for a hearing during trial or for a new trial on the issue of the prosecutor's failure to endorse or produce a res gestae witness precludes consideration of the issue on appeal unless, absent review, manifest injustice would result.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael F. Bakaian,* Assistant Prosecuting Attorney, for the people.

*Mark J. Kriger,* for defendant.

Before: M. F. CAVANAGH, P.J., and ALLEN and MACKENZIE, JJ.

M. F. CAVANAGH, P.J. Defendant was convicted by a jury of first-degree murder, MCL 750.316;

MSA 28.548, two counts of assault with intent to commit murder, MCL 750.83; MSA 28.278, and felony-firearm, MCL 750.227b; MSA 28.424(2). Defendant received the statutory sentence on the first-degree murder charge, and 2 to 20 years imprisonment for each of the assault charges. The sentencing judge refused to sentence defendant on the felony-firearm charge on double jeopardy grounds. The sentencing judge had presided at defendant's first trial which ended in a mistrial when the jury could not agree upon a verdict.

On October 2, 1978, defense counsel mailed a claim of appeal on defendant's behalf to this Court. However, this Court has no record of receiving that document. Upon being apprised that no claim of appeal was pending in this Court, counsel filed a delayed motion for new trial in Recorder's Court. That motion was denied.

On April 9, 1980, defense counsel presented this Court with a delayed application for leave to appeal. That application was granted.

The charges in the instant case arose out of an incident which occurred in Detroit on January 20, 1978. The two complaining witnesses and the decedent were walking down an alley when a man jumped from behind some bushes and started shooting at them. The two complaining witnesses identified this man as the defendant. Upon hearing the shots, all three started running but the decedent, Kevin May, fell after only a few steps.

Officer Harold Butts testified that on the evening of January 20, 1978, he received a radio run concerning a felonious assault. At the scene, the officer noted some footprints leading from the gate of defendant's house going south in the alley. The footprints led south through the alley and then turned east by a church. The officer observed a

long gun sticking in the snow in front of the church. The officer also found shotgun shells in the alley and in a backyard off the alley.

The defendant testified that on the evening of January 20, 1978, while shoveling snow near his garage he heard gunshots. Upon hearing the shots, defendant walked toward the alley and saw "a tall, slender guy dressed in dark clothing, black coat running past". He testified that the man walked toward a neighbor's yard, hesitated, found the gate closed, ran to defendant's gate, saw defendant and took off down the alley. Defendant then ran to his backdoor, knocked, and after waiting a couple of seconds and receiving no answer, ran to the front door, entered the house and told his father what had happened. Defendant then called 911, the police emergency number, and told the operator what had happened.

Defendant also testified that on December 11, 1977, he purchased a shotgun from a K mart department store. An employee of the K mart store testified that on that date defendant purchased a shotgun with a serial number L-728621. The serial number found on a gun which was found near the scene of the homicide was L-728621.

The defendant raises several issues on appeal. We discuss these *seriatim*.

The defendant sought to introduce testimony about threats alleged to have been made by one of the complaining witnesses to the brother of a defense witness in an alleged attempt to keep testimony favorable to the defendant from being presented. There is much evidence on the record to demonstrate hostility and the likelihood that threats were made by both sides. In the specific

incident to which the defendant draws this Court's attention there is no direct link to the defendant and so, taken with the fact that the witness did testify, the testimony concerning the alleged threats would have been lacking in probative value, *People v Shelden,* 407 Mich 539; 287 NW2d 176 (1980), irrelevant, MRE 402, and a waste of time, MRE 403.

The defendant's next claim of error merits some discussion by this Court. A shotgun found near the scene of the homicide was dusted for fingerprints and taken to Central Photo by the officer who made the discovery. Subsequently, a photograph of the latent prints on the shotgun was attached to an index card labeled "DPD 267" and sent to the latent prints department. Officer John Flelick of the latent prints department testified that he received negatives and photographs of latent fingerprints found on the weapon. According to police department records, the prints were "no good" because there were less than nine points of comparison. The prints, therefore, lacked a sufficient number of points of comparison to make a positive identification. Pursuant to departmental policy, the photographs and negatives were kept for 30 days and then destroyed. Officer Flelick never received a set of defendant's fingerprints for comparison. He testified that one point of denial would establish that the two sets of prints, those found on the gun and those taken from the defendant, were not one and the same.

Defense counsel never asked to examine the prints or requested that they be preserved past the 30-day period. However, there is no indication that defense counsel knew of the existence of this evidence until after it had been destroyed. At trial, defense counsel moved for a mistrial based on the

suppression of the print evidence. The motion was denied.

On appeal, defendant argues that the police department's destruction of the latent prints deprived defendant of possible exculpatory evidence and thereby denied him due process of law as guaranteed by the United States and Michigan Constitutions. US Const, Am XIV, Const 1963, art 1, § 17. The prosecutor argues that the loss of evidence which occurs before a defense request for it does not require reversal.

This Court considered a similar question in *People v Amison,* 70 Mich App 70; 245 NW2d 405 (1976), *lv den* 402 Mich 815 (1977). In *Amison,* the defendant was convicted of delivery of heroin. It was brought out at trial that the police had lost the tape made at the alleged heroin sale. Despite the absence of the tape, several officers testified, over defense counsel's objection, to what they heard while monitoring the transaction. On appeal, defendant claimed that the negligent loss of the tape denied him a fair trial in violation of his due process rights and deprived him of his Sixth Amendment right to fully cross-examine witnesses against him. After a careful review of state and federal law, the *Amison* Court stated:

"This Court has uniformly held that, absent intentional suppression or a showing of bad faith, the loss of evidence which occurs before a defense request for it does not mandate reversal. * * * *People v Bendix,* 58 Mich App 276; 227 NW2d 316 (1975), *People v McCartney,* 60 Mich App 620; 231 NW2d 472 (1975). This Court has also held that the intentional destruction of tape recordings, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal. *People v Hardaway,* 67 Mich App 82; 240 NW2d 276 (1976). It is only where this Court has found that there was no effort made to preserve the evidence

initially, *People v Anderson,* 42 Mich App 10; 201 NW2d 299 (1972), *remanded on other grounds* 391 Mich 419; 216 NW2d 780 (1974), or where there was the possibility that certain test results may have been actually suppressed, *People v Drake* [64 Mich App 671; 236 NW2d 537 (1975)] that this Court has found ·possible suppression mandating reversal. In *Anderson* and *Drake,* hearings were required to determine the quality of plaintiff's conduct and the nature of the lost evidence." *Amison, supra,* 79-80.

The *Amison* Court found that as "[t]he facts requisite to our determination of defendant's due process claim are of record" no hearing was required. *Id.,* 80. The Court held that the facts did not constitute a denial of due process and affirmed defendant's conviction.

As in *Amison,* the facts requisite to this Court's determination on the defendant's due process claim are also of record. The police policy of destroying fingerprint evidence after 30 days, when it has been determined that a positive matchup is not possible from the latent prints, is not looked on by this Court with great favor. Although we recognize the need to control the number of files or the types of materials that are kept in police files from growing too large, we must bear in mind the importance of maintaining evidence which may play a crucial part in a defendant's proving of his case. In the instant case where the fingerprints evidence was destroyed in accordance with police policy and procedure and there has been no evidence presented of intentional misconduct, suppression or bad faith, the facts do not compel us to use the destruction of this evidence as a basis for the reversal of defendant's conviction, nor do we believe that any further light would be shed upon this question by a remand for an evidentiary hearing on the matter.

Defendant next contends that the trial court erred in failing to identify its discretion whether to admit evidence of a prior bad act by the defendant directed toward the deceased. The trial judge ruled that evidence of the altercation between the defendant and the deceased was admissible under MRE 404(b). The basis for defendant's argument is the case of *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974), which held that a trial court must positively indicate and identify its discretion when determining the admissibility of a defendant's prior convictions. Defendant also argues that the trial court abused its discretion in admitting the evidence of the prior bad act.

We disagree with both of these arguments presented by the defendant. Both *People v Cherry, supra,* and *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), to which the *Cherry* decision referred, involved situations where evidence of a defendant's prior convictions was sought to be introduced at trial. Neither the Court of Appeals nor the Michigan Supreme Court have yet extended the requirement of *Cherry* and *Jackson* to the judge's determination of admissibility of evidence of a defendant's prior bad acts. This Court in *People v Bolden,* 92 Mich App 421, 425; 285 NW2d 210 (1979), held that where the record is silent it will not be presumed that the lower court did not conduct the required balancing process. The *Bolden* Court further stated that if such a requirement were to be imposed, it should be forthcoming from the Supreme Court and not this Court. *People v Golochowicz,* 89 Mich App 57, 60-62; 279 NW2d 576 (1979), discussed the two cases in which the Supreme Court held that reversible error had been committed where the trial court failed to positively identify its discretion to exclude

a defendant's prior convictions for impeachment purposes. The *Golochowicz* Court further indicated that it could discern no distinction between the use of prior convictions for impeachment and the admissibility of evidence of other similar crimes as these pertain to the judge's identifying its discretion to admit the evidence. However, the *Golochowicz* Court declined to impose this requirement itself.

Most recently in *People v Nabers,* 103 Mich App 354, 366; 303 NW2d 205 (1981), a third panel of this Court stated:

"Like the *Golochowicz* Court, we fail to discern a distinction upon which a greater duty should be imposed on trial judges relative to prior convictions than to similar acts evidence. Also, in accord with the *Golochowicz* Court, however, we decline to mandate this extension of the law ourselves. We are prepared to require, however, that if asked by defense counsel or a defendant, the trial judge must explain on the record how he reached the determination that the probative value of the exercise outweighed its prejudicial effect. The trial court in the instant matter was not asked and, thus, did not refuse to explain the rationale behind its determination on the balancing question. Consequently, we find no error."

The trial judge in the case at bar did not expressly recognize his discretion to exclude similar acts evidence or to weigh the probative value of the evidence against its prejudicial effect on the record. Rather, the trial judge held that the evidence was admissible under MRE 404(b). However, on the basis of *Bolden, Golochowicz,* and *Nabers,* it cannot be said that there was error in the manner in which the court ruled. Further, the trial court in the instant case, as in *Nabers,* was not asked

and thus did not refuse to explain the rationale behind the decision to admit the evidence.

We reject the defendant's contention that the evidence of the prior bad act should not have been admitted under MRE 404(b). The altercation directly involved the defendant and the deceased, and so was relevant to show defendant's motive or intent to commit the homicide. *People v Melvin,* 70 Mich App 138; 245 NW2d 178 (1976), *lv den* 399 Mich 817 (1977), *People v David Wells,* 102 Mich App 122; 302 NW2d 196 (1980). We also cannot say that contrary to the trial judge's conclusion the evidence was more prejudicial than probative. The facts were sufficient to lead the trial judge to the conclusion that the evidence was more probative than prejudicial. There is no basis for this Court to conclude that the trial court abused its discretion in admitting the evidence.

Next, the defendant asserts that the trial court erred in its charge of instructions to the jury. It is not necessary for this Court to discuss the alleged error asserted by defendant because the defendant failed to object to these instructions, has failed to show the existence of manifest injustice due to these instructions and so has failed to preserve the objection, thereby precluding appellate review. *People v Handley,* 101 Mich App 130, 136; 300 NW2d 502 (1980).

We reject the defendant's contention that reversible error was committed by the trial court by its comments on evidence of footprints found by police officers in the snow. The court's instruction to the jury on the difference between direct and circumstantial evidence was the standard Michigan Criminal Jury Instruction (CJI 3:1:10) on mixed direct and circumstantial evidence. This claimed error is also meritless in light of the court's cautionary

instruction to the jury concerning any inadvertent comment on the evidence by the trial court.

Also, we conclude that there was sufficient evidence presented at trial to support a finding of premeditation and deliberation and thus a verdict of first-degree murder. This Court in *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971), characterized the time interval required for premeditation as one which is sufficient to "afford a reasonable man time to subject the nature of his response to a 'second look' ".

Factors to be considered when determining whether an accused had an opportunity to give his actions a second look include: 1) consideration of the previous relationship between the parties, 2) the accused's actions prior to the killing, 3) circumstances of the killing itself, and 4) the accused's conduct after the homicide. *People v Meadows,* 80 Mich App 680, 691; 263 NW2d 903 (1977), *People v Mullaney,* 104 Mich App 787; 306 NW2d 347 (1981), *People v Gilbert,* 101 Mich App 459; 300 NW2d 604 (1980). In the instant case, the previous violent hostilities between the parties, the purchase by the defendant of the gun one month prior to the shooting, the perpetrator's lying in wait for the victims, and the defendant's testimony that after hearing shots he entered his home and called the police, all taken in the light most favorable to the prosecution, present sufficient evidence to support the charged offense, first-degree murder. *People v DeClerk,* 400 Mich 10; 252 NW2d 782 (1977).

Finally, the defendant contends that he was denied a fair trial by the prosecution's introduction of testimony on rebuttal by an unendorsed witness alleged to be a res gestae witness by the defendant.

A res gestae witness is "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense". *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). The prosecution has an affirmative duty to endorse all such witnesses on the information and to produce them at trial. *People v Abdo,* 81 Mich App 635, 642-643; 265 NW2d 779 (1978), *lv den* 405 Mich 805 (1979). However, if the prosecutor does not comply, it is the defendant's responsibility to move for a hearing during trial, or for a new trial, prior to seeking appellate review. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). The failure to move for either will normally foreclose this issue on appeal, *People v Willie Pearson,* 404 Mich 698, 722; 273 NW2d 856 (1979), unless, absent review, manifest injustice will result. *People v Phillips,* 75 Mich App 690, 694; 255 NW2d 733 (1977), *People v Brooks,* 96 Mich App 96; 292 NW2d 139 (1980), *People v LeFlore,* 96 Mich App 557; 293 NW2d 628 (1980), *lv den* 409 Mich 927 (1980).

Because the defendant in the instant case did not move to endorse the witness in question during the trial, nor did he object at trial to this witness's being called as a rebuttal witness although an objection was made to the calling of the only other rebuttal witness, and because defendant did not claim in his motion for new trial nor does he claim in this appeal that the witness should have been endorsed at trial, we find the defendant was not denied a fair trial by the prosecution's use of this unendorsed witness. Further, since the witness is only arguably a res gestae witness, as he was not present at the actual commission of the crime, it

was not error for his testimony to be used in the prosecution's rebuttal.

Based on the foregoing reasons, we affirm the defendant's convictions.