PEOPLE v MILLER

Docket No. 163510. Submitted November 15, 1994, at Detroit. Decided
February 6, 1995, at 9:10 A.M. Leave to appeal sought.

Danny J. Miller was convicted by a jury in the Recorder's Court
for the City of Detroit, Leonard Townsend, J., of armed rob-
bery, possession of a firearm during the commission of a felony,
and felonious assault. The proofs at trial established that the
defendant stole at gunpoint a twelve-pack of beer from a liquor
store. The store clerk notified the police and gave a description
of the defendant and his vehicle. The police observed the
defendant's vehicle, engaged in a high-speed chase, during
which the defendant shot at the police and tried to run a police
car off the road, and arrested the defendant when he eventu-
ally crashed. While the defendant was still at the scene of the
crash, the store clerk was brought there and identified the
defendant as the person who had robbed him. The defendant
appealed.

The Court of Appeals *held:*

1. Although the defendant did not object at trial that the on-
the-scene identification was improper because it was under-
taken in violation of his right to counsel, the issue will be
considered on appeal because of its importance. Because an
adversary judicial proceeding had not been initiated yet, the
constitutional right to counsel pursuant to US Const, Am VI
had not attached. However, independent of any federal consti-
tutional mandate, before or after commencement of the judicial
phase of a prosecution a suspect is entitled to be represented by
counsel at any identification procedure unless the particular
circumstances justify the undertaking of identification proce-
dures before counsel can be secured.

2. Police officers may conduct an on-the-scene identification
without the presence of counsel if undertaken promptly after

REFERENCES

Am Jur 2d, Criminal Law §§ 735, 746, 972, 974.

Accused's right to assistance of counsel at or prior to arraignment.
5 ALR3d 1269.

Validity, under Federal Constitution, of police lineup or showup
procedures—Supreme Court cases. 34 L Ed 2d 839.

the crime, except where the police have very strong evidence that the person stopped is the culprit or where the police have made a valid arrest of the suspect for a separate crime, unless the police have more than a mere suspicion that the suspect was responsible for the second crime to which the identification pertains. Because the defendant already had been arrested for the assault on the police during the chase and the police had more than a mere suspicion that the defendant had committed the robbery, the on-the-scene identification of the defendant without benefit of counsel was improper. However, because this issue was not raised at trial, reversal would be appropriate only where the error could have been decisive of the outcome of the trial or where prejudice would be presumed or reversal would be automatic. Under the circumstances of this case, prejudice is not presumed, reversal is not automatic, and the error in admitting evidence of the on-the-scene identification was not decisive of the outcome.

3. The question whether the in-court identification by the store clerk was admitted improperly because the on-the-scene identification was impermissibly suggestive has not been preserved for appellate review. Because there was no objection at trial, no hearing was held, and no record is available from which it can be determined whether the on-the-scene identification was unduly suggestive.

4. The in-court identification by the store clerk had a source independent of the pretrial identification at the crash scene. The clerk had ample opportunity to observe the defendant for several minutes in a well-lit situation and was able to make an in-court identification of the defendant without dependence on the pretrial confrontation.

5. The testimony of the police officer who was with the store clerk when he made the on-the-scene identification of the defendant to the effect that the clerk had identified the defendant as the robber is not hearsay, because the clerk was available for cross-examination.

6. The record does not support the defendant's allegation that the prosecutor asked questions and a police officer gave answers that impermissibly infringed on the defendant's right to remain silent.

Affirmed.

CRIMINAL LAW — ON-THE-SCENE IDENTIFICATIONS — RIGHT TO COUNSEL.

Police officers may conduct an on-the-scene identification without the presence of counsel promptly after a crime, except where

the police have very strong evidence that the person stopped is the culprit or where the police have made a valid arrest of the suspect for a separate crime, unless the police have more than a mere suspicion that the suspect was responsible for the crime to which the identification pertains.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Carolyn M. Breen,* Assistant Prosecutor, for the people.

*John D. Lazar,* for the defendant on appeal.

Before: HOOD, P.J., and JANSEN and A. T. DAVIS, JR.,* JJ.

JANSEN, J. Following a jury trial in the Recorder's Court for the City of Detroit, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797, possession of a firearm during the commission of a felony, second offense, MCL 750.227b; MSA 28.424(2), and felonious assault, MCL 750.82; MSA 28.277, arising out of two separate cases that were consolidated for trial. The trial court sentenced defendant to five to fifteen years' imprisonment for the conviction of armed robbery, to be served consecutively to a five-year term for the conviction of felony-firearm. Defendant was sentenced to thirty-two months' to four years' imprisonment for the conviction of felonious assault, to be served concurrently with the other two sentences. Defendant appeals as of right, and we affirm.

I

The incident occurred on September 9, 1992, at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

approximately 5:30 P.M. at Beck's Liquor Store in Van Buren Township. Matthew Daman, the cashier working at the store at that time, stated that defendant first entered the store and went to the beer cooler. Defendant took out a twelve-pack of Budweiser beer and placed it on the counter. He searched his pockets and told Daman that his money was in the car and that he would return after going to the car. A few minutes later, defendant returned with a shotgun and aimed it at Daman. Defendant picked up the beer with one hand, while holding the shotgun with the other hand. Defendant said, "Thank you for the beer," and walked out of the store. Once defendant was near the door, he said, "Thank you, this beer is on the house."

Daman ran after defendant and saw him drive away in a white truck with a white top. Daman saw some of the license plate numbers. Daman went back to the store, called the police, and gave them a description of defendant's vehicle and the direction in which defendant was traveling. Van Buren Township Police Officer Fred Sweet stated that he received a radio report of an armed robbery at Beck's Party Store. Sweet received both a description that the assailant was a white male with a shotgun who was driving a white pickup truck with a white cab and information concerning some of the license plate numbers.

As Sweet was driving toward Beck's, he observed a pickup truck matching the description given. Once behind the truck, Sweet noticed that the license plate numbers given to him matched those on the truck. Sweet engaged his siren, and defendant sped away. Three patrol cars began to chase defendant. Sweet drove alongside defendant's truck and saw him drinking from a can of Budweiser beer. Defendant then entered Sweet's lane

and attempted to push Sweet's car off the road. Defendant hit Sweet's car three or four times. Sweet was able to get in front of defendant, and he saw defendant pick up a shotgun. Sweet then heard a gunshot, and defendant again drove beside Sweet and rammed the side of Sweet's car twice. Ultimately, defendant lost control of his truck, and it rolled onto a grass median on I-94.

The police officers apprehended defendant. Inside the truck was a shotgun, several shotgun shells, empty beer cans, and several unopened beer cans. John Gora, the officer in charge of the case, arrived shortly thereafter. Defendant was in the back seat of a patrol car. Gora then went to the police station, where Daman was giving a statement, and brought Daman to the scene of the crash. Daman identified defendant as the person who committed the robbery. Daman was taken back to the police station, and defendant was taken to the police station in a separate vehicle.

## II

Defendant first argues that Daman's on-the-scene identification of him was improper because it was taken in violation of his right to counsel. We note that while defendant did not raise this issue below, it involves an important legal issue for which the facts are sufficiently presented. However, we conclude that this was plain, unpreserved error that was not decisive of the outcome or prejudicial to defendant. *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994).

Defendant bases his argument that he was entitled to counsel at the on-the-scene identification pursuant to Michigan case law. Indeed, defendant's argument could not be premised on the Sixth Amendment right to counsel. Clearly, the

Sixth Amendment right to counsel did not attach here because the corporeal identification was not conducted at or after the initiation of adversary judicial proceedings. *Moore v Illinois,* 434 US 220, 226-227; 98 S Ct 458; 54 L Ed 2d 424 (1977); *People v Anderson (After Remand),* 446 Mich 392, 402; 521 NW2d 538 (1994).

In *People v Jackson,* 391 Mich 323, 338; 217 NW2d 22 (1974), our Supreme Court stated:

> [I]ndependent of any Federal constitutional mandate, . . . both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel and that, except in exigent circumstances, photographs of a suspect known to be in custody or who can readily be produced for a lineup may not be displayed to witnesses.

This rule has been somewhat limited by the Supreme Court in *People v Kurylczyk,* 443 Mich 289, 302; 505 NW2d 528 (1993), where the Court held that in the case of photographic identifications, the right of counsel attaches with custody.

The Supreme Court has noted in dicta that a recognized justification for the absence of counsel at an eyewitness identification procedure exists where there is a prompt on-the-scene corporeal identification within minutes of the crime. *People v Anderson,* 389 Mich 155, 187, n 23; 205 NW2d 461 (1973). Therefore, the question is whether, under Michigan case law, defendant was entitled to counsel at the corporeal identification conducted by the police at the scene of the crash.

This Court essentially has adopted three differ-

ent approaches in analyzing whether a defendant is entitled to counsel during a prompt on-the-scene corporeal identification. In *People v Dixon,* 85 Mich App 271, 280-281; 271 NW2d 196 (1978), this Court held that when a police officer has more than a mere suspicion that the suspect is wanted for the crime, the officer cannot return the suspect to the scene of the crime, but must take the suspect to the police station and a have a lineup at which counsel is present. The "mere suspicion" rule announced in *Dixon,* although advocated by defendant in his brief, has not gained support as a blanket rule. Indeed, two judges signing the *Dixon* majority later disaffirmed the rule and followed *People v Turner,* 120 Mich App 23; 328 NW2d 5 (1982). See *People v Fields,* 125 Mich App 377, 382; 336 NW2d 478 (1983) (HOLBROOK, JR., J., concurring); *People v Wilki,* 132 Mich App 140, 146; 347 NW2d 735 (1984) (MAHER, J., concurring).

In *Turner,* this Court held that police officers may conduct an on-the-scene identification without the presence of counsel any time promptly after the crime except where the police have very strong evidence that the person stopped is the culprit. Very strong evidence exists where the suspect has decreased any exculpatory motive, such as where the suspect has confessed or presented the police with highly distinctive evidence of the crime or has a highly distinctive personal appearance. *Id.,* p 36. However, this Court also held that where the police already have arrested validly the suspect for a separate offense, the police may subject the suspect to an on-the-scene identification without counsel unless they have more than a mere suspicion that the suspect was responsible for the crime to which the identification pertains. *Id.,* p 37.

The third approach was taken in *People v Cow-*

*ard,* 111 Mich App 55; 315 NW2d 144 (1981). There, this Court recognized that a prompt on-the-scene identification within minutes of the crime is justified without counsel. Accord *People v Purofoy,* 116 Mich App 471, 480; 323 NW2d 446 (1982). This Court specifically noted that there was nothing in the record to suggest that the police officers were not attempting, in good faith, to determine whether there was a reasonable likelihood that the suspect was connected with the crime or was merely an unfortunate victim of circumstances. *Coward, supra,* pp 63-64. Thus, the implication is that the identification procedure must be a prompt on-the-scene identification and reasonable police practice. See *People v Marks,* 155 Mich App 203, 214; 399 NW2d 469 (1986).

We adopt the *Turner* rule. Even the prosecutor acknowledges that the approach outlined in *Turner* appears to be the most widely adopted by this Court. *People v Raybon,* 125 Mich App 295, 307; 336 NW2d 782 (1983); *Fields, supra,* p 381; *People v McCuaig,* 126 Mich App 754, 758; 338 NW2d 4 (1983); *People v St Cyr,* 129 Mich App 471, 474; 341 NW2d 533 (1983); *Wilki, supra,* p 143; *People v Murray,* 147 Mich App 227, 230; 383 NW2d 613 (1985), aff'd on other grounds 428 Mich 343; 408 NW2d 789 (1987). As this Court has stated, on-the-scene identifications are inherently suggestive and the *Turner* rule protects a defendant's right to counsel. *Wilki, supra,* p 143.

We apply the "more than a mere suspicion" rule of *Turner* because defendant already was arrested validly for a separate offense (the assault committed on the police). We conclude that the police had more than a mere suspicion that defendant was responsible for the armed robbery and that, therefore, counsel was required at the corporeal identification made at the scene of the crash. Here, the

police knew that the assailant was a white male with a shotgun driving in a white pickup truck with a white cab. The police knew some of the license plate numbers. Sweet stated that he followed defendant's truck because of the description and because the license plate numbers matched. Once defendant was apprehended, a shotgun was found, as well as several empty and several unopened beer cans. The police knew someone had committed an armed robbery at a liquor store.

Under these circumstances, we conclude that, at the time of his apprehension, the police had more than a mere suspicion that defendant was the culprit of the armed robbery. The police were presented with highly distinctive evidence of the crime, including a shotgun, beer cans, the description of the truck, and the matching license plate numbers. Because there was more than a mere suspicion that defendant was the person who committed the armed robbery, the police should have transported defendant to the police station to conduct a lineup with counsel present.

Although we believe that the testimony concerning the on-the-scene identification should have been suppressed, we find that reversal is not required under the standard for assessment of unpreserved nonconstitutional plain error. *Grant, supra,* p 552. The error was unpreserved because defendant did not object at trial to the testimony concerning the on-the-scene identification.

A plain unpreserved error may not be considered by an appellate court for the first time on appeal unless the error could have been decisive of the outcome or unless it falls under the category of cases where prejudice is presumed or reversal is automatic. *Id.,* p 553. We believe that the error involved was not decisive of the outcome.

There was ample evidence that defendant com-

mitted the crime. Daman saw defendant before the on-the-scene identification and identified defendant as the assailant in court. Daman testified that defendant used a shotgun, and a shotgun was confiscated from defendant's truck. Further, Daman's description of the truck matched the truck that the defendant was driving when he was apprehended. There were unopened Budweiser beer cans in the truck, and Daman stated that defendant took a twelve-pack of Budweiser beer cans. Therefore, even if we ignore the testimony concerning the on-the-scene identification, there was sufficient evidence presented to sustain a conviction of armed robbery. Accordingly, the error was not decisive of the outcome of this case, and defendant was not prejudiced by the erroneous admission of the on-the-scene identification testimony.

III

Defendant next argues that the admission of the in-court identification by Daman was improper because the on-the-scene identification was impermissibly suggestive. Defendant did not move at trial to suppress the in-court identification testimony, nor did he move for an evidentiary hearing concerning the suggestiveness of the on-the-scene identification. Because there was no evidentiary hearing concerning this matter below, we do not have a record on which we can review whether the on-the-scene identification was unduly suggestive. This issue, therefore, is not preserved for appellate review. *People v Lee,* 391 Mich 618, 626-627; 218 NW2d 655 (1974); *People v Daniels,* 163 Mich App 703, 710-711; 415 NW2d 282 (1987).

IV

Defendant also argues that the in-court identifi-

cation was improper because there was no independent basis for the identification. The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or unduly suggestive comments. *Kurylczyk, supra,* p 303; *People v Laidlaw,* 169 Mich App 84, 92; 425 NW2d 738 (1988); *People v Syakovich,* 182 Mich App 85, 89; 452 NW2d 211 (1989). Because we have found that the pretrial identification technically was tainted by improper procedure, we will address this issue. We conclude, however, that an independent basis for the in-court identification was established pursuant to the factors set forth in *People v Kachar,* 400 Mich 78, 95-96; 252 NW2d 807 (1977).

Because there was no evidentiary hearing held below, our review is somewhat limited. The trial testimony indicates that Daman had no prior relationship with or knowledge of the defendant. However, Daman had several good opportunities to observe defendant. Defendant initially entered the store and placed the beer on the counter. He left the store, and returned with a shotgun. Daman was about three feet away from defendant when he stood across the counter. When defendant left, Daman again saw defendant in the truck. The length of time between the offense and the disputed in-court identification was five months. Daman consistently has identified defendant as the assailant, both in court and at the pretrial identification done at the crash scene. There was no previous identification of another person as the assailant. Further, although Daman did state that he was afraid and the situation was "pretty scary," his actions of following defendant and noting the type and color of the truck indicate that he kept a clear head. Daman noted that the assailant had a beard.

Accordingly, we find that the in-court identification had an independent source. Daman clearly saw defendant for several minutes in a well-lit situation. Thus, we are confident that Daman was able to make an in-court identification of defendant without dependence on the pretrial confrontation done at the scene of the crash.

### V

Defendant next argues that he was prejudiced by police officer Gora's testimony that Daman identified defendant as the person who robbed the store. Defendant contends that such testimony was inadmissible hearsay. Our Supreme Court has recently held that third-party identification testimony about the prior statement of a witness is not hearsay where the identifier (Daman) is subject to cross-examination. *People v Malone*, 445 Mich 369, 377-378; 518 NW2d 418 (1994); MRE 801(d)(1)(C). Daman was subject to cross-examination. The testimony was properly admitted.

### VI

Last, defendant argues that the prosecutor elicited testimony from a police officer that impermissibly infringed on defendant's right to remain silent. Defendant did not object to this testimony at trial. Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party was affected and a timely objection was made. MRE 103(a)(1).

At trial, the prosecutor elicited testimony from Michigan State Police Trooper Michael Asbridge that defendant, while in the processing holding area of the police station, denied firing his shotgun from his truck. Asbridge further stated that defen-

dant told him that he did not fire at the police officer and that defendant denied committing any armed robbery. The trooper further stated that defendant did not have much of a story. Generally, Asbridge's testimony concerning defendant was that defendant was visibly intoxicated and was acting in a belligerent manner.

We do not find that a substantial right of defendant's was affected. There was no comment by Asbridge concerning defendant's silence, nor was there any testimony indicating that defendant had asserted his right to remain silent. Moreover, the prosecutor's questions were concerned with defendant's sobriety and his behavior in the police station. We do not find that the prosecutor's questions impermissibly infringed on defendant's right to remain silent.

Affirmed.